[No. 21340-7-I. Division One. May 15, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES WESTON, *Appellant*.

*Stephen J. Kozer*, for appellant.

*David S. McEachran, Prosecuting Attorney*, and *Ronald C. Hardesty, Special Deputy*, for respondent.

PEKELIS, J.—In the early morning hours of April 8, 1987, Charles Weston lost control of his pickup truck and slid off the side of the road. Weston suffered a head injury and his passenger was killed. Weston was charged with vehicular homicide, driving while intoxicated and negligent driving.

Pretrial, Weston moved to suppress the results of a blood alcohol test, arguing that the test results were invalid because the blood sample was contaminated with isopropyl alcohol (rubbing alcohol). Weston also moved to exclude a taped statement on the ground that his physical condition at the time he made the statement made it impossible for him to either understand or voluntarily waive his right to remain silent. Both motions were denied.

At trial the jury acquitted Weston of vehicular homicide but convicted him of driving while intoxicated and negligent driving. On the driving while intoxicated conviction, the trial court imposed a fine of $1,000 and sentenced Weston to 1 year in the Whatcom County Jail.

On appeal, Weston contends that the trial court erred in its rulings on the two pretrial motions, admitting both the results of his blood alcohol test and his statements to Trooper Charles Jenkins. He also challenges his 1–year jail sentence for driving while intoxicated.

## I
### FACTS

The following facts, elicited at the CrR 3.5 and 3.6 hearings, are relevant to Weston's motions to suppress his blood alcohol test results and to exclude his taped statement.

A sample of Weston's blood was drawn at the scene of the accident. The medic used isopropyl alcohol to swab Weston's arm, drawing first a sample for medical purposes and then a legal sample.

The State used a gas chromatograph to test Weston's blood alcohol content. Weston's test results did not show the presence of isopropyl alcohol. Evidence presented at the CrR 3.6 hearing established that a gas chromatograph can separate isopropyl alcohol from ethanol when it is functioning properly. A toxicologist employed by the Washington State Toxicology Laboratory testified that the State's gas chromatographs are specifically set up for alcohol analysis and for separating closely related alcohols. He also testified that it is the State's routine practice to calibrate

their gas chromatographs each morning and to test them periodically throughout the day to ensure that their performance is acceptable. Based on this testimony, the trial court denied Weston's motion to suppress his blood alcohol test results.

Weston was taken from the scene of the accident to St. Luke's hospital in Bellingham. Weston gave a statement to Trooper Jenkins 2½ days after the accident, shortly after he had been moved from the intensive care unit. The entire interview, including the giving of *Miranda*[1] rights and Weston's statements, was tape–recorded and played for the trial court at the CrR 3.5 hearing.

At the time Weston made his statement, he was on sedatives which, according to an expert witness testifying on his behalf, generally cause profound drowsiness, confusion, and blurred vision. Trooper Jenkins testified that Weston appeared drowsy during the interview and closed his eyes periodically. However, Jenkins also testified that Weston appeared to understand the questions asked, that his answers were responsive, and that he had indicated his willingness to speak after being advised of his constitutional rights.

Weston testified that he recalls being questioned by someone who identified himself as an officer. He stated that he could not see or speak well, and was not aware of where he was or what he was doing. Although he responded to the person questioning him, he "was in such pain and so confused it sounded like everything was in a tunnel to me." Family members who were with Weston before and after his interview with Jenkins testified that he appeared incoherent and confused, and at times did not know where he was.

After hearing the witnesses' testimony and listening to Weston's taped statement, the trial court concluded that Weston was capable of exercising a free and rational choice

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

and admitted the taped statement. The court found that "for the duration of the tape Mr. Weston was able to focus on the subject, was able to give responsive answers and did do so." Although the court "accepted" the testimony of the family members, it did not find their testimony inconsistent with the testimony of Jenkins. The expert testimony about the sedatives was discounted because the expert knew nothing about Weston's condition or the effect of the sedatives on him.

## II
### BLOOD ALCOHOL TEST

Before blood alcohol test results can be admitted into evidence, the State must present prima facie proof that the test chemicals and the blood sample are free from any adulteration which could conceivably introduce error into the test results. *State v. Erdman,* 64 Wn.2d 286, 287, 391 P.2d 518 (1964). Once the State has made its prima facie case, the defendant must come forward with some evidence that impugns the accuracy of the test. *Erdman,* 64 Wn.2d at 288.

Weston contends that the State has not made a prima facie case because isopropyl alcohol is an interferent and oxidizable material prohibited by RCW 46.61.506 and WAC 448-14-010(2)(a). RCW 46.61.506(3) provides that analysis of a person's blood must be performed according to methods approved by the State Toxicologist in order to be considered valid. WAC 448-14-010 sets forth the State Toxicologist's criteria for approved methods of blood alcohol analysis. Specificity is one of the criteria:

(2) Specificity.
(a) On living subjects, the method should be free from interferences native to the sample, such as therapeutics and preservatives; or the oxidizable material which is being measured by the reaction should be identified by qualitative test.

WAC 448-14-010(2)(a).

Weston's contention that the presence of isopropyl alcohol renders test results per se inaccurate is without

merit. WAC 448–14–010(2)(a) does not prohibit the presence of isopropyl alcohol in a blood sample so long as an appropriate method of blood testing is used. Evidence presented at the CrR 3.6 hearing indicates that isopropyl alcohol is an oxidizable material which can cause inaccurate test results if an oxidative testing method is used. However, a gas chromatograph can separate isopropyl alcohol from ethanol, and the presence of isopropyl alcohol does not cause inaccurate test results if the chromatograph is properly calibrated. Thus, the presence of isopropyl alcohol in Weston's blood sample does not render the sample per se inadmissible.

The State presented unrefuted testimony that it is the State's routine practice to calibrate its gas chromatographs each morning and to test the machines periodically throughout the day. This testimony, coupled with the fact that gas chromatographs can accurately test blood alcohol content even in the presence of isopropyl alcohol, satisfies the requirements of a prima facie case of admissibility. *See Erdman,* 64 Wn.2d at 288. As Weston's evidence did not impugn the accuracy of his blood alcohol test, the trial court correctly admitted the test results.

The remaining issues on appeal do not merit publication. None warranted reversal of Weston's conviction for negligent driving and driving while intoxicated. *See* RCW 2.06-.040; CAR 14.

Affirmed.

SCHOLFIELD and WINSOR, JJ., concur.